IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DELTA STONE PRODUCTS, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>XPERTFREIGHT, US EXPRESS, LLC, EMBASSY CARGO S.P.A., HARBOR FREIGHT TRANSPORT CORP., RSA – SUN INSURANCE OFFICE, LTD., SERAN SALAMON, an individual, RAFIK NAZAROV an individual, and DOES 1 through 10,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING RSA-SUN INSURANCE'S MOTION TO DISMISS**<br><br>Case No. 2:16-cv-369-CW-EJF<br><br>Judge Clark Waddoups |

Plaintiff Delta Stone Products ("Delta Stone") seeks recovery for losses stemming from damage to a stone cutting machine it had purchased, occurring while the machine was in transit from Italy to Utah. (*See generally* Dkt. No. 2.) Among others, Delta Stone has sued RSA-Sun Insurance Office, Ltd. ("RSA"), an Italian insurance company. RSA issued a "Cargo Insurance Policy" to Embassy Cargo S.P.A., a broker/shipper, to insure the cargo during its transit. (*See* Dkt. Nos. 70-1 & 75-1, p. 19 (the policy).)

RSA moves the court to dismiss the case against it for lack of personal jurisdiction and improper service. (Dkt. No. 61.) RSA also seeks to enforce a forum selection clause in the insurance contract indicating that Italy is the proper venue for the dispute. (*Id.*) On March 15, 2017, the court heard oral argument from RSA and Delta Stone, and requested supplemental briefing on the question of the court's personal jurisdiction over RSA. (*See* Dkt. No. 78.)

1

After considering the parties' briefing and supplemental materials, oral argument, and relevant case law, the court **GRANTS** RSA's Motion to Dismiss for lack of personal jurisdiction, (Dkt. No. 61). Though RSA's explicit inclusion of Utah in the insurance policy's territory of coverage constitutes some showing of minimum contacts with this forum, the court concludes that exercising personal jurisdiction over RSA would offend traditional notions of fair play and substantial justice. Because the court lacks personal jurisdiction over RSA, the court does not reach the issues of improper service or the forum selection clause.

**BACKGROUND**

Delta Stone, a Utah corporation based in Heber City, Utah, purchased a stone cutting machine from Simec SPA, an Italian company, for use in cutting stone slabs for a time sensitive government project. (Compl. ¶¶ 1-2, 16-17, Dkt. No. 2.) Embassy Cargo S.P.A., an Italian company with its principal place of business in New York,[1] acted as a broker/shipper for the machine from Italy to Heber City and obtained the cargo insurance from RSA. (*Id.* ¶ 7.) The cargo was located in Italy at the time Embassy Cargo and RSA entered into the insurance contract, and Embassy Cargo paid the insurance premium on the policy in Italy. (*See* Genesio Decl. ¶ 9-10, Ex. A, Dkt. No. 61-1.)

The "Certificate" to the insurance policy is written in Italian with translations below the

---

[1] The Complaint alleges that Embassy Cargo provides transportation services for commercial goods throughout the United States and that its principal place of business is in New York, but does not state Embassy Cargo's place of incorporation. (*Id.* ¶ 7.) A sworn declaration attached to RSA's motion states that Embassy Cargo is an Italian company. (*See* Genesio Decl. ¶ 8, Ex. A, Dkt. No. 61-1.) Delta Stone does not dispute the declaration or otherwise create an issue of fact regarding Embassy Cargo's place of incorporation. Thus, the court will credit the declaration's sworn statement that Embassy Cargo is an Italian company. But the court will also accept the Complaint's allegation that Embassy Cargo has its principle place of business in New York, since RSA has not disputed this allegation and, even if it had, the dispute would be resolved in favor of Delta Stone at this stage. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004) ("The district court must resolve all factual disputes in favor of the plaintiff.").

Italian in English. (*See* Dkt. No. 70-1, p. 2-3 & 75-1, p. 19.) The Certificate shows that RSA contracted with Embassy Cargo on November 26, 2014 to provide cargo insurance on the stone cutting machine "for the voyage from Castello di Godego (TV) to Heber City UT, USA." (*Id.*) In addition, the Certificate states: "This contract is subject to Italian Law ad [sic] practice and in case of dispute the place of jurisdiction shall be Genoa." (*Id.*) The contract also contains a number of "Clauses" and attachments written in English. (*See* Dkt. No. 70-1.) In the "Institute Cargo Clauses," the "Risks Covered" provision states: "This insurance covers all risks of loss of or damage to the subject-matter insured," with enumerated exceptions not relevant to this motion. (*Id.* at 8.) The "Institute Cargo Clauses" concludes with a "Law and Practice" provision, which states: "This insurance is subject to English law and practice." (*Id.* at 10.) The same language regarding English law also appears at the end of the "Institute War Clauses" and "Institute Strikes Clauses." (*Id.* at 13, 17.)

Delta Stone tendered its claim for payment of the damages to the machine to RSA. (*See* Compl. ¶ 51.) When RSA received notice of the alleged damage to the machine it hired VeriClaim, an independent surveying company, to appoint a surveyor to inspect the damage. (*See* Genesio Decl. ¶ 12.)

Unsatisfied with RSA's offer to resolve the claim, Delta Stone now sues RSA for breach of contract as a third-party beneficiary of the cargo insurance contract between RSA and Embassy Cargo. (*See* Compl. ¶¶ 48-56.) Delta Stone alleges this court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. (*Id.* ¶ 10.)[2] Delta Stone alleges that RSA has "denied complete coverage for the subject loss by claiming that the subject insurance only covers the direct damage to the Stone Cutting Machine (i.e., the repair costs), and denies that such

---

[2] Delta Stone pleads other bases for the court's subject matter jurisdiction over the other defendants. (*See* Compl. ¶¶ 11-12.) But, with respect to RSA, Delta Stone only pleads diversity jurisdiction. (*Id.* ¶ 10.)

3

insurance covers the foreseeable consequential damages resulting from such damage." (*Id.* ¶ 52.) Thus, Delta Stone alleges RSA has breached the insurance contract by "its refusal to accept Plaintiffs' complete tender of claim" and seeks as damages "the actual repair and delay costs in an amount not less than $430,611, together with interest, costs and attorneys' fees." (*Id.* ¶¶ 53, 56.) Delta Stone seeks this amount of damages in its claims against the other defendants, which include shippers and forwarders along the machine's path of transportation. (*See id.* ¶¶ 35-36, 42, 46-47.)

In its motion, RSA does not dispute that the insurance policy covers Delta Stone's claim for repair costs, but denies that the policy covers any delay damages. (Mot. to Dismiss at 3, Dkt. No. 61.)

For the reasons that follow, the court holds that it lacks personal jurisdiction over RSA.

**ANALYSIS**

"Because a court without jurisdiction over the parties cannot render a valid judgment, [the court] must address Defendants'[s] personal jurisdiction argument before reaching the merits of the case." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

"[P]laintiffs bear the burden of establishing personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). To meet this burden on a pre-trial motion to dismiss, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* at 1070. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings*, 149 F.3d at 1091.

Because the parties base their personal jurisdiction arguments on the pleadings, declarations, and other written materials, Delta Stone need only make a prima facie showing of personal jurisdiction over RSA. *Dudnikov*, 514 F.3d at 1070. The court takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of Delta Stone. *Id.* (citation omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)). Because Utah's long-arm statute confers the maximum jurisdiction allowed by due process of law, Utah Code Ann. § 78B-3-201(3), the inquiry under Utah law "collapses . . . into the more general 'due process' standard for jurisdiction." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

Delta Stone concedes that the facts of this case do not implicate the court's general personal jurisdiction. (*See* Opp'n 7, Dkt. No. 70.) Thus, the court turns to the issue of its specific personal jurisdiction over RSA.

The due process inquiry for specific personal jurisdiction has two steps. First, the court must "ask whether the nonresident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (quoting *OMI Holdings*, 149 F.3d at 1091); *accord Rusakiewicz*, 556 F.3d at 1100 ("[The] jurisdictional inquiry in Utah diversity cases is reduced to a single question: did the defendants have sufficient 'minimum contacts' with the state of Utah to establish personal jurisdiction over them?"). Next, even where

a defendant had "minimum contacts" with a forum, the court must consider "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Rusakiewicz*, 556 F.3d at 1102 (quoting *OMI Holdings*, 149 F.3d at 1091).[3] "This analysis is fact specific." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citing *TH Agric. & Nutrition*, 488 F.3d at 1287, 1292).

      A.  *Minimum Contacts*

A defendant has minimum contacts with a forum where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and internal quotation marks omitted). In analyzing the first prong of the inquiry—a defendant's purposefully directed activities— "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see Racher v. Lusk*, 674 F. App'x 787, 791 (10th Cir. 2016) (unpublished) (noting that specific jurisdiction "is premised on the defendant obtaining a benefit in exchange for purposeful conduct directed at the forum state"). This inquiry ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071

---

[3] Though the parties debate the provision of Utah's long-arm statute under which this case could fall, *see* Utah Code Ann. § 78B-3-205, Utah courts and the Tenth Circuit regularly proceed to analyze whether a case satisfies the due process analysis under the Fourteenth Amendment first because "any set of circumstances that satisfies due process will also satisfy the [Utah] long-arm statute." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999) (quoting *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)); *see also Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) ("The Wyoming long-arm statute authorizes jurisdiction to the full extent of the federal constitution. Thus, we need not conduct a statutory analysis apart from the due process analysis." (citations omitted)). Following this clear authority, the court addresses the requirements of federal due process first in its personal jurisdiction analysis.

(quoting *Burger King*, 471 U.S. at 475).

### 1. Purposeful availment

RSA argues that it has done nothing to purposefully avail itself of the privilege of conducting business in Utah. (*See* RSA's Suppl. Br. 3-5, Dkt No. 82.) RSA contends that all of its relevant conduct occurred in Italy, pointing to the following undisputed facts:

- RSA was an Italian insurance company, (Genesio Decl. ¶ 3, Dkt. No. 61-1).
- The RSA cargo insurance policy was issued to Embassy Cargo S.P.A., an Italian company, (*id.* ¶ 8).
- No Utah resident was a party to the contract; rather, Delta Stone sues as a third-party beneficiary of the policy.
- The Certificate to the policy provides for Italian law and jurisdiction, ("Certificate/Policy of Insurance," Dkt. No. 75-1).
- The cargo was located in Italy at the time the policy was issued, (Genesio Decl., ¶ 10).
- The premium was paid to RSA in Italy, (*id.* ¶ 9).
- RSA did not solicit business in Utah or have any contacts with Utah, (*id.* ¶¶ 15-38).

(RSA's Suppl. Br. 3-4.) Delta Stone does not contest these facts, but adds that (1) while Embassy Cargo paid the premium in Italy, the price of the premium would have been included in the total price that Delta Stone paid to purchase and deliver the machine; (2) VeriClaim, RSA's surveyor and claims agent, came to Utah to conduct a survey and investigate the insurance claim, and ultimately offered to pay Delta Stone by delivering a check to Utah; and (3) RSA's insurance policy provides coverage for "all risks of loss of or damage to" the machine, and insures the machine's safe delivery to Heber City, Utah. (Resp. to Supp. Br. 3, Dkt. No. 83; *see* Compl. ¶¶ 50-52.) Delta Stone contends that because the insurance policy expressly identifies Utah as the final destination for the insured item, RSA can be said to have purposefully availed itself of this forum. (Resp. to Supp. Br. 4.)

Upon review of the case law in the insurance context, the court finds this last point—that the policy clearly and explicitly identifies Utah as the delivery destination for the machine insured and the claim arises from this contract—dispositive of the minimum contacts issue,

7

though it is a close call. Where an insurance contract expressly includes a forum within its territory of coverage, the prevailing rule provides that the foreign insurer's act of insuring a risk that may be realized in the insured's forum can satisfy the "purposeful availment" requirement for personal jurisdiction over the insurer. *See* William C. Hoffman, *Personal Jurisdiction Over Alien Insurance Companies: The Territory-Of-Coverage Rule*, 26 Tort & Ins. L.J. 703 (Summer 1991) ("[T]he majority of U.S. courts that have addressed the issue to date holds that the inclusion of the forum state in the territory of coverage of an insurance policy may support jurisdiction over an alien insurer.").

In the contract context, courts uphold the fundamental jurisdictional principles that "[a]n individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state" and "the mere presence of the insured within the forum state will not establish a substantial connection." *TH Agric. & Nutrition*, 488 F.3d at 1287, 1288 (citations omitted). "But 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" *Id.* at 1287–88 (quoting *Burger King*, 471 U.S. at 473).

In *TH Agriculture*, the Tenth Circuit found that foreign insurers had established sufficient minimum contacts with Kansas where the foreign insurers' issued an insurance policy containing a worldwide territory-of-coverage clause and an option to defend the insured, which was located in Kansas. *Id.* at 1288. The Circuit found the contract language alone, i.e., the coverage provision and reservation of the right to control litigation, sufficient to show the foreign insurer's "minimum contacts" with the insured's forum. *Id.*[4] The court explained that the foreign insurers

---

[4] Notably, the Tenth Circuit found that other factors relevant in the contract context, like the parties' negotiations and actual performance, did not support specific jurisdiction over the

8

had "*affirmatively* cho[sen] to include the forum state in the territory of coverage. That is, insurers quite clearly avail themselves of the privilege of conducting business in a forum state when that state is included in an insurance policy's territory of coverage." *Id.* at 1290. But the court also recognized that such contacts are "weak" and "qualitatively low on the due process scale." *Id.* at 1292 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1092).

The facts of this case both mirror and depart from key facts in *TH Agriculture*. Here, the cargo insurance policy was negotiated by foreign entities based in Italy and New York, and executed in Italy. The cargo was in Italy at the time and the premium was paid in Italy. RSA did not solicit business in Utah, no Utah entity was a party to the contract, and no premium was paid from Utah, at least directly. These contacts do not establish minimum contacts in Utah.

But, like the *TH Agriculture* court concluded, other considerations do. Importantly, the cargo insurance policy expressly identifies "Heber City, Utah" as the destination for the insured goods. Thus, RSA was "unavoidably aware" it was insuring a risk of loss or damage that could arise in Utah, or anywhere on the path between Italy and Utah. *Com. of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 669 (1st Cir. 1980) ("Plaintiffs established that vessels insured by West of England frequented Puerto Rico regularly over a period of years, and that they were provided with insurance-related services while there. West of England was unavoidably aware that it was responsible to cover losses arising from a substantial subject of insurance regularly present in Puerto Rico. . . ."). Consequently, RSA can be said to have purposefully availed itself

---

foreign insurers in Kansas. *See TH Agric. & Nutrition*, 488 F.3d at 1288. The insurers were a group of thirteen European insurance companies. They did not solicit business in Kansas and no premiums were paid from Kansas; rather, the insured's parent company, headquartered in the Netherlands, solicited the insurance policies through a Dutch broker. The policies were issued in the Netherlands, the parent company tendered the subsidiary's claims in Europe, and all dealings relating to the policies and coverage for the claims against the insured subsidiary took place either in the Netherlands or Switzerland. *Id.* While all these interactions were insufficient to establish minimum contacts with Kansas, the court found minimum contacts satisfied by the inclusion of worldwide coverage and reservation of the right to defend in the contract. *Id.*

9

of the privileges and benefits of conducting business within Utah. *See TH Agric. & Nutrition*, 488 F.3d at 1291. RSA's action to insure a risk that could arise in Utah was "neither incidental nor accidental" because RSA "explicitly contracted" for such a risk and, presumably, "received higher premiums in exchange." *Id.*

Notably, the policy in this case differs from that in *TH Agriculture* by providing only liability insurance for risk of loss or damage and not reserving the right to control litigation. Despite this difference, the case for minimum contacts here is arguably stronger than in *TH Agriculture* because the policy is narrower and more explicit than a worldwide coverage provision. RSA expressly agreed to insure a good in transit from Italy to Utah, and the Utah destination was identified on the face of the contract. There is no concern that the basis for jurisdiction here would be "what a defendant-insurer does *not* do, that is, its failure to exclude the forum state from coverage," because the forum is explicitly included in the contract. *Id.* at 1290. While the contacts here are "relatively weak," *id.* at 1291, the court concludes, following *TH Agriculture*, that RSA has sufficient minimum contacts with Utah based on the insurance policy's explicit coverage for the risk of loss or damage in Utah on the face of the contract.

### 2. Injury Arising out of or Relating to Forum Activities

The court must also determine "whether the plaintiff's claim arises out of or results from actions by the defendant [itself] that create a substantial connection with the forum state." *TH Agric. & Nutrition*, 488 F.3d at 1291 (quoting *OMI Holdings*, 149 F.3d at 1091). RSA's contact with Utah arose when it issued a cargo insurance policy that expressly included Utah within the covered territory. Delta Stone filed its claim, presumably from Utah, seeking coverage under the policy for alleged delay damages that occurred in Utah,[5] and RSA denied that claim. Thus, Delta

---

[5] RSA and Delta Stone do not dispute that the policy covers the actual (repair) damages Delta Stone incurred, but other documents in the case suggest that the actual damage to the machine

Stone's claim can be said to arise out of, or at least relate to, RSA's contacts with Utah, that is, RSA's policy insuring the risks of loss and damage to goods expressly destined for Utah.

In sum, RSA's action to insure cargo clearly and explicitly bound for Utah establishes weak minimum contacts with Utah and concerns injury arising out of, or relating to, its contacts with Utah.

### B. Fair Play & Substantial Justice

Even where a defendant's acts satisfy the minimum contacts standard, "minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction." *TH Agric. & Nutrition*, 488 F.3d at 1292 (quoting *Burger King*, 471 U.S. at 477–78). Thus, the court must determine "whether exercise of jurisdiction is so unreasonable as to violate 'fair play and substantial justice'" considerations. *OMI Holdings*, 149 F.3d at 1095 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987)). In assessing the reasonableness of exercising personal jurisdiction, courts weigh five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*TH Agric. & Nutrition*, 488 F.3d at 1292 (quoting *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000)).

During this analysis, courts also "take into account the strength of a defendant's minimum contacts." *Id.* at 1292. "[T]he reasonableness prong of the due process inquiry 'evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant

---

occurred outside of Utah. (*See* Dkt No. 80-6 & Ex. 102-1, pp. 11-24.) Instead, the dispute from which Delta Stone's claim arises against RSA revolves primarily around the delay damages Delta Stone incurred while completing the project in Utah.

need show in terms of unreasonableness to defeat jurisdiction.'" *Id.* (alteration in original) (quoting *OMI Holdings*, 149 F.3d at 1092).

Here, RSA's minimum contacts—arising from contract language insuring the risks of loss of or damage to a good traveling to Heber City, Utah—"are qualitatively low on the due process scale." *OMI Holdings*, 149 F.3d at 1095. Thus, RSA's burden to show unreasonableness is correspondingly light. *See TH Agric. & Nutrition*, 488 F.3d at 1292. After weighing each factor, the court finds that exercising personal jurisdiction over RSA in Utah would be unreasonable.

### 1. Burden on RSA of Litigating in the Forum

"[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings*, 149 F.3d at 1096. The Supreme Court cautions that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. "[W]hen the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised'" before a court exercises personal jurisdiction over the defendant. *OMI Holdings*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 114). But courts also recognize that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

RSA is located in Italy, has no license to conduct business in Utah, maintains no offices in Utah, employs no agents in Utah, and did not enter into any contracts with or directly insure any Utah resident. (*See* Genesio Decl. ¶¶ 15-48.) RSA issued the insurance policy in Italy to an

Italian company and in accordance with Italian, or possibly English, law. Regardless of which choice of law provision applies, RSA would be forced to litigate this dispute in a forum unfamiliar with either Italian or English law. *See OMI Holdings*, 149 F.3d at 1096 (finding burden significant where Canadian corporations had no license to conduct business in Kansas, maintained no offices in Kansas, employed no agents in Kansas, insured no Kansas residents, and Canadian law would apply to the dispute). The policy also indicates that the proper forum should be Genoa, Italy. Again, regardless of ultimate force of this provision, the language indicates the parties' intent, and RSA's understanding, that contract-related litigation would take place in Italy.

Delta Stone's reliance on *Pro Axess* proves unavailing. In that case, the Tenth Circuit found that subjecting a French sunglasses company (Sporoptic) to litigate a dispute with its Utah-based manufacturer and distributor (Pro Axess) in a Utah federal court was not burdensome in the circumstances. *See Pro Axess*, 428 F.3d at 1280. The court specifically noted that Sporoptic's president "demonstrated his ability to journey to the United States for the company's business dealings by meeting with Pro Axess in New York;" Sporoptic owned a subsidiary in California; and Sporoptic's employees and agents "travel to and operate in the United States to conduct economic activity" and regularly conducted business in English, thus "minimizing concerns about the burden that litigating in Utah might place on them." *Id.*

Nothing in this record shows that RSA engages in economic activity in Utah or traveled to the United States at any point during the claims process. Though RSA engaged a New York-based claims agent to conduct limited affairs on its behalf—surveying and investigating Delta Stone's claim—RSA did not authorize VeriClaim to be its agent in the United States generally. Nor can RSA be said to be doing business on a worldwide scale, at least on this record. The

insurance policy does not include worldwide coverage, but rather insures specific cargo on route between Italy and Utah. Despite advances in transportation and communication, the record does not support a finding that RSA travels to and/or operates in the United States to conduct economic activity. The facts of this case are much closer to those in *OMNI Holdings* than *Pro Axess*. Accordingly, the court finds subjecting RSA to litigation in Utah would be a significant burden. This factor weighs in favor of RSA.

### 2. Forum State's Interest in Adjudicating the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* Because Delta Stone is a Utah resident, Utah has an interest in providing a forum for this lawsuit. But the policy states that either Italian or English law will govern this contract. Thus, Utah's interest in providing a forum for its resident "is offset" by the fact that foreign law will govern the dispute. *TH Agric. & Nutrition*, 488 F.3d at 1293–94. Consequently, this factor is neutral and does not weigh in favor of either party.

### 3. Delta Stone's Interest in Convenient and Effective Relief

The third reasonableness consideration "hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI Holdings*, 149 F.3d at 1097. The language of the contract and nature of the dispute greatly diminish any concern that Delta Stone would be foreclosed from pursuing its claim against RSA in another forum.

First, Delta Stone seeks the same amount of damages against other defendants remaining in this case, and thus maintains a forum in which to vindicate its claim. Moreover, RSA's dismissal would not result in duplicative or conflicting litigation because Delta Stone's claim against RSA under the policy is conceptually and legally distinct from the claims against the other defendants in this case, which primarily center on the damage to the machine during transit.

Most importantly, however, RSA has offered to resolve to the repair damages associated with the machine, so the only dispute between these parties concerns a discrete issue of contract interpretation: whether the cargo insurance policy covers alleged delay damages that accrued during the cargo's repair. Foreign law applies to this legal question, and foreign law experts would need to testify in this forum. The forum selection clause may also act to remove this case to Italy. In light of these provisions, Italy appears to be the more convenient forum for the claim brought here, turning as it does on an issue of foreign law rather than issues of fact, witnesses, or other evidence that may be in the United States. *See OMI Holdings*, 149 F.3d at 1097 (concluding that this factor weighed in favor of the defendant Canadian corporations where the defendants entered into the insurance contracts with the Canadian parent corporation in Canada, the parties agreed that Canadian law would govern their dispute, and little evidence was located in Kansas); *see also TH Agric. & Nutrition*, 488 F.3d at 1295 ("We are not convinced that the location of some evidence in Kansas, or the United States generally, is sufficient to practically *foreclose* litigation elsewhere.").

Delta Stone argues that it would be prohibitively expensive to litigate its claim in Italy, but does not present any evidence demonstrating that the expense would be "prohibitive" or "so overwhelming as to practically foreclose pursuit of the lawsuit." *TH Agric. & Nutrition*, 488 F.3d

at 1295. On the whole, because Delta Stone may obtain convenient and effective relief in Italy, this factor weighs against the exercise of jurisdiction in Utah.

### 4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor "examines whether the forum state is the most efficient place to litigate the dispute." *OMI Holdings*, 149 F.3d at 1097. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *TH Agric. & Nutrition*, 488 F.3d at 1296 (quoting *OMI Holdings*, 149 F.3d at 1097).

As discussed in the third factor, foreign substantive law (either Italian or English) will govern this dispute and the claim against RSA is distinct from the claims against all other defendants in this case. Thus, litigating in Italy will not create piecemeal litigation. Moreover, the cargo insurance policy was negotiated, drafted, executed, and paid in Italy by Italian companies, so the most relevant witnesses are located in Italy, or possibly New York. While the wrong underlying the breach of contract claim occurred while the machine was in transit across the United States and, arguably, in Utah, witnesses relevant to the underlying damage are not particularly relevant to the issue of whether the contract provides for delay damages. Delta Stone has not shown that Utah "specifically is the most efficient forum." *Id.* at 1296. Overall, this factor weighs against exercising jurisdiction in Utah.

### 5. State's Interest in Furthering Fundamental Substantive Social Policies

The final consideration "focuses on whether the exercise of personal jurisdiction by [the forum state] affects the substantive social policy interests of other states or foreign nations." *TH Agric. & Nutrition*, 488 F.3d at 1297 (*OMI Holdings, Inc.*, 149 F.3d at 1097). In weighing this factor, the court must "look closely at the extent to which the exercise of personal jurisdiction

interferes with" Italy's sovereignty. *Id.* "Relevant considerations include 'whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident.'" *Id.* (quoting *OMI Holdings, Inc.*, 149 F.3d at 1098).

In this case, this court's exercise of jurisdiction in Utah would affect Italian policy interests and interfere with Italy's sovereignty. RSA is an Italian company. RSA entered into a cargo insurance policy with an Italian broker working in the United States, and the contract is governed by Italian and/or English law. Though a Utah resident is a third party beneficiary of the contract, RSA did not conduct business in Utah. "Moreover, when jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated." *OMI Holdings*, 149 F.3d at 1098. The court is required "to give deference to the international nature of this case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004). This factor also weighs against exercising jurisdiction in Utah.

In sum, Utah's interest in providing a forum for a resident to seek redress and Delta Stone's interest in obtaining relief at home are outweighed by the other reasonableness factors, which appear to favor RSA. Litigating this case in Utah would significantly burden RSA; Utah's interest is offset by the contract's application of foreign law; Italy provides a convenient, efficient, and effective forum for relief; and the exercise of jurisdiction would interfere with Italy's sovereignty. Because RSA's contacts with Utah are truly minimal, it need not make a strong showing of unreasonableness to defeat personal jurisdiction. *TH Agric. & Nutrition*, 488 F.3d at 1297. In these circumstances, the court concludes that the exercise of personal jurisdiction over RSA would offend traditional notions of fair play and substantial justice.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** RSA's Motion to Dismiss and **DISMISSES** the case against RSA for lack of personal jurisdiction, (Dkt. No. 61).

DATED this 14th day of August, 2017.

BY THE COURT:

CLARK WADDOUPS
United States District Judge