IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DELTA STONE PRODUCTS,<br><br>    Plaintiff,<br><br>vs.<br><br>XPERTFREIGHT, US EXPRESS, LLC, EMBASSY CARGO S.P.A.; HARBOR FREIGHT TRANSPORT CORP.; RSA-SUN INSURANCE OFFICE, LTD; SERAN SALOMON, an individual; RAFIK NAZAROV, an individual, and DOES 1-10,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING XPERTFREIGHT'S MOTION TO DISMISS; GRANTING XPERTFREIGHT'S MOTION FOR SUMMARY JUDGMENT(Carmack Claim); GRANTING XPERTFREIGHT'S MOTION FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES (Cross-Claim); DENYING HARBOR FREIGHT'S MOTION FOR SUMMARY JUDGMENT; and GRANTING HARBOR FREIGHT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF<br><br>Case No. 2:16-CV-00369-CW<br><br>Judge Clark Waddoups |

Before the court are the following motions: 1) Xpertfreight's Motion to Dismiss Plaintiff's negligence and breach of contract claims (ECF No. 79.); 2) Xpertfreight's Motion for Summary Judgment on Plaintiff's breach of contract and Carmack Amendment claim (ECF No. 80.); 3) Xperfreight's Motion for Summary Judgment on U.S. Express' cross-claims for contribution and allocation of fault under the Carmack Amendment, as well as for costs and attorneys' fees (ECF No. 81.); and 4) Harbor Freight Transport Corp.'s Motion for Summary Judgment on the Carmack Amendment claim. (ECF No. 102.) The court heard oral argument on all these motions on August 3, 2017. Following the close of discovery and oral argument, Harbor Freight filed a Motion for Leave to File a Supplemental Brief in Support of Summary Judgment, alleging newly acquired evidence. (ECF No. 134.) The court will address each motion below.

1

## INTRODUCTION

Plaintiff, Delta Stone Products ("Delta Stone"), seeks recovery for losses stemming from damage to a stone cutting machine it purchased from Simec SPA, an Italian company, occurring while the machine was in transit from Port of Newark to Heber, Utah. (*See generally* ECF No. 2.)[1] On or about November 14, 2014, the stone cutting machine was shipped from the Port La Spezia; it arrived at the Port of Newark, New Jersey on or about December 13, 2014. (ECF No. 2 at ¶ 20.) Two days later, Xpertfreight, a "motor carrier," arranged for World Distribution Services ("WDS"), to pick up the stone cutting machine. (ECF No. 80-1 at 4.) WDS arranged for Harbor Freight Transport Corp. ("Harbor Freight") to transport the stone cutting machine from the Port of Newark Container Terminal to its facilities in Newark--the total transport was two miles and took about ten minutes. (ECF No. 102-1 at 3.)

On or about December 18, 2014, US Express picked up the stone cutting machine from Harbor Freight's facilities to transport it to Heber, Utah. (ECF No. 2 at ¶ 21; *see also* ECF No. 102-1 at 7.) At the time of pick up, US Express' driver, Rafik Nazarov, signed an Invoice/Pick-up Receipt provided by Harbor Freight which contains the following language:

> Customer agrees that when HARBOR FREIGHT TRANSPORT CORP releases goods to customer or its authorized representative, including any common carrier or bailee engaged by Customer, that HARBOR FREIGHT TRANSPORT CORP will have no further obligation or responsibility to Customer or the goods. A signed receipt to HARBOR FREIGHT TRANSPORT CORP without exception as to loss or damage shall be conclusive evidence that the goods were not lost or damaged while in the possession of HARBOR FREIGHT TRANSPORT CORP.

(ECF No. 102-1 at 7.)

---

[1] Two bills of lading were issued for the shipment of the stone cutting machine. There was a port-to-port bill of lading covering the shipment from Port La Spezia to Port Newark (*See* ECF No. 133-1.) and a separate bill of lading issued by U.S. Express in Port Newark to cover the inland travel. (*See* ECF No. 133-2.) The inland bill of lading governs in this case.

According to the Complaint, on December 22, 2014, the stone cutting machine was delivered to Delta Stone in Heber, Utah significantly damaged.[2] (ECF No. 2 at ¶ 22.) Upon delivery, US Express' driver added the following hand-written note to the Invoice/Pick-up Receipt provided by Harbor Freight:

> US Express/Seran Salomon recognizes and acknowledges that they have bent and broken this machine and not limited to other unseen or undetected damage upon delivery. US Express accepts all responsibility to fix and replace if Delta Stone is not satisfied with machinery per the original and new agreement with manufacturer.

(ECF No. 102-1 at 8.) Sometime thereafter, Vericlaim conducted a Marine Cargo Survey Report of the transport of the stone cutting machine and concluded: "Damages were caused when US Express[sic] truck driver, Mr. Seran Salamon, utilized ratchet cargo straps over the top of the machine to secure the protective tarp during inland transit." (ECF No. 102-1 at 17.)

As a result of the damage to the stone cutting machine, Delta Stone alleges it was delayed in performing its obligations for a government project, incurring approximately $386,170 in damages, as well as $44,441 in repairs. (ECF No. 2 at ¶¶ 24-5.) Delta Stone filed suit in May 2016, alleging the following claims: 1) Carmack Amendment Liability against Xpertfreight, US Express, Seran Salamon, Rakiv Nazarov, Embassy Cargo, and Harbor Freight; 2) Breach of Contract against Xpertfreight, US Express, Seran Salamon, Rakiv Nazarov, Embassy Cargo, and Harbor Freight; 3) Negligence against Xpertfreight, US Express, Seran Salamon, Rakiv Nazarov,

---

[2] Embassy Cargo S.P.A. acted as the broker/shipper for the shipment from Italy to Utah. (ECF No. 2 at ¶ 18.) All claims against Embassy Cargo were dismissed, without prejudice, by Delta Stone in June 2017. (ECF No. 111.)

3

Embassy Cargo, and Harbor Freight; and 4) Breach of Insurance Contract against RSA-Sun Insurance.[3]

**MOTION TO DISMISS (ECF No. 79)**

Xpertfreight moved to dismiss Delta Stone's second and third causes of action for breach of contract and negligence pursuant to Rule 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc., v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, in the Complaint filed in May 2016, Delta Stone pled Xpertfreight was a "common carrier," "freight forwarder," or "interstate motor carrier." *See* ECF No. 2 at ¶¶ 3, 11, 30. The deadline for Delta Stone to file a Motion to Amend Pleadings pursuant to the Scheduling Order in this matter was December 16, 2016. (ECF No. 50.) Delta Stone never amended its Complaint to assert claims against Xpertfreight as a broker and the deadline to do so has passed.[4]

---

[3] All claims against RSA-Sun Insurance were dismissed by the court for lack of personal jurisdiction. *See* ECF No. 131.

[4] In their briefs, both Delta Stone and US Express argued that because Xpertfreight Freight was listed as a "carrier" in a Bill of Lading DS000042 (ECF No. 80-4) and an Invoice XI004 (ECF No. 80-5) this creates an issue of fact as to whether Xpertfreight is a carrier entitled to preemption. Both Delta Stone and US Express conceded during the hearing, however, there is no evidence Xpertfreight prepared either document. Also, the Complaint did not allege these matters, and the court will not consider them for the 12(b)(6) motion.

Delta Stone's claims against Xpertfreight for breach of contract and negligence are preempted by the Carmack Amendment, 49 U.S.C. 14706, which provides the exclusive remedy for cargo claims. "The Carmack Amendment so thoroughly regulates carrier liability that 'every circuit which has considered the matter . . . has either held or indicated that it would hold that the Carmack Amendment preempts state common law [claims].'" *Bullocks Express Transp., Inc., v. XL Specialty Ins. Co.*, 329 F. Supp. 2d 1246, 1253 (D. Utah 2004) (*quoting Underwriters v. N. Am. Van Lines*, 890 F.2d 1112, 1120 (10th Cir. 1989). "This broad preemption covers not only common law negligence claims, but also claims for breach of contract." *Id*. at 1253.

Moreover, as conceded at the hearing by the parties, Xpertfreight's negligence claim is also preempted by 49 U.S.C. § 14501 (c)(1) ("ICCTA"), which expressly preempts negligence claims arising out services of a carrier or broker. Accordingly, the court grants Xpertfreight's motion to dismiss Delta Stone's breach of contract and negligence claims.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a). A material fact is one that may affect the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id*. The nonmoving party may not rest solely on allegations on the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324.

A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.1997) (*citing Anderson*, 477 U.S. at 248). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995). "Conclusory allegations will not create a genuine issue of material fact necessitating trial." *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Generally, the court construes "the record in the light most favorable to the nonmoving party." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008).[5]

**MOTION FOR SUMMARY JUDGMENT-Carmack Amendment (ECF No. 80)**

Through this motion, Xpertfreight seeks summary dismissal of Delta Stone's first claim, Carmack Amendment Liability, and second claim, breach of contract. (ECF No. 80 at 3.) The court already dismissed the breach of contract claim, *see supra*. Since that request is now moot, the court will only address the first claim below.

In its opening brief, Xpertfreight averred that the legal element required to prevail on the Carmack Amendment claim is as follows:

> The liability imposed on a carrier under the Carmack Amendment is "for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States…." 49 U.S.C. § 14706. On a Carmack claim, "the shipper establishes a *prima facie* case against either the initial carrier or the delivering carrier by proving: (1) delivery of the property to the carrier in good condition; (2) arrival of the property at the

---

[5] Both of Xpertfreight's motions for summary judgment, ECF Nos. 80 and 81, as well as Harbor Freight's motion, ECF No. 102, were filed prior to amendments to Local Rule DUCivP. 56-1; thus, all of these motions are being reviewed under the previous local rule 56.

destination in damaged or diminished condition; and (3) the amount of its damages."
*Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192, 1196 (10th Cir. 2003)
(citing 49 U.S.C. 14706(a)).

Delta Stone did not respond at all to the "legal element stated by the moving party" as required by DUCivR 56-1(c)(2)(A). Since Delta Stone did not "disagree" with Xpertfreight's stated element, or provide its own citation to legal authority regarding Carmack Amendment liability, this court accepts Xpertfreight's statement of this legal element. Ultimately, the authority cited by Xpertfreight is the only legal element for the Carmack claim before the court.

In support of its motion, Xperfreight listed thirty-two "undisputed material facts." *See* ECF No. 80. In response Delta Stone only "disputed" eight of these facts. *See* ECF. No. 97. The court notes, however, that none of Delta Stone's alleged disputes are "genuine." *Allen,* 119 F.3d at 839. The court will address each of Delta Stone's alleged "disputes" below.

In its statement of "Undisputed Material Facts," Xpertfreight alleged in part:

 1. Xpertfreight operates as an interstate property broker ("freight broker") pursuant to authority granted to it to do so by the Federal Motor Carrier Safety Administration ("FMCSA") under US DOT Number: 2240854, and MC Number 626764. *See* Declaration of Xpertfreight, ("Xpertfreight Dec."), attached as Ex. A, ¶ 3 and Ex. 1 thereto.[6]

 2. As an authorized and bonded broker, Xpertfreight arranges for the transportation of freight by motor carriers that are properly licensed and have authority from the FMCSA to operate as motor carriers. *See* Xpertfeight Dec. ¶¶ 4-5.

 3. Xpertfreight does not have authority from the FMCSA to act or otherwise provide

---

[6] The Declaration of Xpertfreight does not contain the perjury language required by 28 U.S.C. § 1746. Opposing counsel, however, never raised this issue. Moreover, this alone does not preclude the court from conducting its analysis because at the hearing the parties argued their positions and made proffers regarding whether Xpertfreight should be treated as a "carrier" or "broker," Rule 56(c)(1) allows the court to consider all materials in the record in making its decision, and the information in the declaration would become admissible if this matter went to trial.

transportation services as a motor carrier. In other words, Xpertfreight is not a motor carrier. *See* Xpertfreight Dec. ¶¶ 6-12.

. . .

20. Xpertfreight acted only as a freight broker in relation to the Cargo; it did not provide any services of or act in any way as a motor carrier. *See* Xpertfreight Dec. ¶ 25. *See also* US Express Depo. Tr. pp. 48:15-20, 95: 1-4.

21. US Express acknowledged Xpertfreight is only a freight broker in relation to the Cargo. *See* US Express Depo. Tr. pp. 24:8-9, 48:9-20; 95:1-4, 95:19-20.

After "disputing" each of the five facts referenced above, Delta Stone cited *Hewlett-Packard Co. v. Brother's Trucking Enter.*, 373 F. Supp.2d 1349 (S.D.Fl. 2005), to argue that "whether a company is a broker or a carrier is a question of fact." (*See* ECF No. 97 at 3.)[7] *Hewlett-Packard* is distinguishable from the facts here. In that case, the plaintiff had assured defendant during negotiations the cargo was going to be driven by trucks equipped with GPS, the truck was going directly to the destination, and there were at least two written representations from plaintiff's agents regarding "timely transit" and "control systems." *Id*. at 1352. Under those circumstances, where plaintiff asserted control over the cargo, the court concluded a factfinder could find plaintiff served as a "motor carrier" and thus denied summary judgment on Plaintiff's Carmack Amendment claim. Here, the record does not show Delta Stone exerted that type of control over the cargo.

Next, as the evidence relied upon to dispute the facts referenced above, Delta Stone cited Bill of Lading DS000042 and Invoice XI004, both documents which list Xpertfreight as a "carrier." (ECF No. 97 at 3.) As discussed previously, Delta Stone acknowledged at the hearing

---

[7] Notably, DUCivR56-1(c)(1)(B) specifically provides, "If a fact is disputed, so state and concisely describe and cite with particularity the evidence on which the non-moving party relies to dispute the fact (without legal argument)."

8

there is no evidence in the record Xpertfreight prepared either of these documents. Moreover, documents prepared by third-parties listing Xpertfreight as a "carrier" cannot create a genuine issue of fact. *See Chubb Group of Ins. Co. v. H.A. Transp. Sys, Inc.*, 243 F. Supp. 2d 1064, 1070 (C.D. C.A. 2002) (where party who acted as "broker" in transaction in question was identified as "carrier" in a bill of lading drafted by a third-party this did not create an issue of fact under Rule 56). Thus, neither Delta Stone's legal argument, nor the cited documents, creates a genuine issue of fact with respect to these five facts.

> Xpertfreight also alleged in its statement of "Undisputed Material Facts":
>
> 22. Xpertfreight did not provide the vehicle or driver for the transportation of the Cargo; those services were provided exclusively by US Express. *See* Xpertfreight Dec. ¶ 26; *see also* US Express Depo. Tr. p. 94:21-24.
> . . .
>
> 24. Xpertfreight did not provide any receipt or handling of the Cargo; those services were provided exclusively by US Express. *See* Xpertfreight Dec. ¶ 28; *see also* US Express Depo. Tr. pp. 99:21-100:1.

Delta Stone's basis for "disputing" these two facts is "statements contained in paragraph 20 of the Declaration of Xpertfreight." *See* ECF No. 97. But the statements in paragraph 20 of Xpertfreight's Declaration do not address the material facts alleged above. In the Declaration it is simply averred that on December 15, 2014, Xpertfreight arranged for WDS to pick up/transfer the stone cutting machine from the Port of Newark Container Terminal to WDS' facilities in Newark. *See* ECF No. 80-1. On the other hand, the evidence cited by Xpertfreight, especially the transcript of US Express' deposition, supports each of these two factual assertions. To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995). "Conclusory allegations will not create a genuine issue of material fact

9

necessitating trial." *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Accordingly, Delta Stone's conclusory allegations of dispute, without supporting evidence on the record, do not create a genuine issue of fact with respect to these two facts.

Finally, Delta Stone disputes the following alleged fact:

> 29. On a brokered load, it is not uncommon for a shipper or other third party to list the broker's name in the carrier identification box on a bill of lading. *See* Xpertfreight Dec. ¶ 31; *see also* US Express Depo. Tr. pp. 48:22-49:3.

Delta Stone "disputes" this fact on the basis that "it assumes facts not in evidence and the cited materials do not support this factual conclusion." ECF No. 97. The assertion must be rejected. The evidence cited by Xperfreight, US Express's testimony provides as follows:

> Q. In your experience in the transportation industry, is it common on a brokered load for the broker's name to appear in the carrier box on a bill of lading?
>
> . . .
>
> THE WITNESS: Yes.

*See* US Express Depo. Tr. pp. 48:22-49:3, ECF No. 80-2. Moreover, the court takes judicial notice of that the Broker/Carrier Agreement provides: "6. Shipping Document Execution: Carriers are to be named on the bill of lading as the 'carrier of record[.]'" (ECF No. 80-1 at pg. 12.) Given the provision in the Broker/Carrier Agreement, and US Express' testimony, it was not unfounded for Xpertfreight to allege that "the shipper or a third-party" were the ones who listed its name on the carrier identification box on the bill of lading. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Here, Delta Stone proffered no evidence to dispute this fact. It simply averred that the fact "assume[s] facts not in evidence." This alone is not enough, when the record is taken as a whole fails to create a genuine issue for trial. Ultimately, it is undisputed by Delta Stone that the Broker/Carrier Agreement between US Express and Xpertfreight lists US Express as the "licensed motor carrier" and Xpertfreight as the "licensed property broker." (*See* ECF No. 80-1 at 11; *see also* ECF No. 97 at pg. 4.) Accordingly, the court likewise concludes this is not a "genuine dispute."

In reviewing the record, other evidence supports Xpertfreight's motion. Delta Stone did not dispute that the Broker/Carrier Agreement states Xpertfreight's role as broker was to "negotiate and arrange for transportation of their shipments in interstate commerce." (ECF No. 80-1 at pg. 11; *see also* ECF No. 97 at 4.) This acknowledgment by Delta Stone fits squarely with the statutory definition of a "broker," meaning a "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, **negotiates** for, or holds itself out by solicitations, advertisement, or otherwise as selling, providing, or **arranging for**, transportation by motor carrier for compensation." *See* 49 U.S.C. § 13102 (2) (emphasis added). Likewise, Delta Stone did not dispute the Invoice/Pick-Up Receipt identifies US Express, not Xpertfreight, as the "trucker" who transported the stone cutting machine to Heber. (ECF No.97 at p.8.)

Taking these undisputed facts, and the record as a whole, the evidence before the court is that Xpertfreight negotiated and arranged for the transportation of the stone cutting machine from New Jersey to Utah by motor carrier US Express, but it did not take possession of the stone cutting machine, nor transport it at any time. Thus, Xpertfreight's role in this transaction fits the statutory definition of a broker, not "(A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States[,]" as required to find liability under the Carmack Amendment. *See* 49 U.S.C. § 14706(a)(1). Because Carmack Amendment liability applies only to carriers, and since brokers are not carriers, brokers like Xpertfreight are not liable for damage to property under the Carmack Amendment. *See AIG Europe (Netherlands), N.V. v. UPS Supply Chain Sols, Inc.*, 765 F.Supp. 2d 472, 482-83 (S.D.N.Y. 2011) ("Carmack Amendment imposes liability on 'carriers' but not on 'brokers," as those terms are defined by the statute"); *Zumba Fitness, LLC v. ABF Logistics, Inc.*, No. 2:15-CV-02151, 2016 WL 4544355, at *5 (W.D. Ark. Aug. 30, 2016) ("it is well established that the Carmack Amendment applies to carriers and freight forwarders, not brokers"); *Buchanan v. Neighbors Van Lines*, No. CV 10-6206 PSG RCX, 2010 WL 4916644, at *6 (C.D. Cal. Nov. 29, 2010) ("brokers are not carriers for purposes of the Carmack Amendment"). Based on this precedent, the court grants Xpertfreight's motion for summary judgment on the claim for Carmack Amendment liability.

Finally, Delta Stone argues that if Xpertfreight is a broker, rather than a carrier, its claim for breach of contract should survive summary judgment. Even if Xpertfreight's preemption argument were to fail, which it does not, Delta Stone's breach of contract claim fails. In the first place, there are no facts pleaded which would support a contract between Delta Stone and

Xpertfreight. The contract was between Xpertfreight and US Express. Recognizing this flaw in its claim, Delta Stone argues that Delta Stone is a third part beneficiary of that contract. (ECF No. 97, at 10-14.) Delta Stone claims that it was the intended beneficiary of the agreement for US Express to transport the equipment to Heber. Even accepting that Delta Stone may be able to prove it was the intended beneficiary of the shipping contract, its claim nevertheless fails. Delta Stone alleges no facts from which the court could infer any breach of the contract by Xpertfreight or any facts from which the court could infer that Xpertfreight's actions caused damage to the stone cutting machine. Thus, Delta Stone's contract claim against Xpertfreight fails.

**MOTION FOR SUMMARY JUDGMENT-Cross-Claim (ECF No. 81)**

Through this motion Xpertfreight moves for summary judgment against Defendant/Cross-Claimant US Express on its claims for contribution, and allocation and/or apportionment for claims of 1) breach of contract; 2) negligence; and 3) liability under the Carmack Amendment. (ECF No. 81.) Xpertfreight also requests attorneys' fees and costs against US Express under Rule 37(c)(2).

Breach of Contract & Negligence Claims

The court will summarily address this motion. As addressed more fully above, US Express' claims against Xpertfreight for breach of contract and negligence are preempted by the Carmack Amendment. *See* 49 U.S.C. 14706. The broad preemption of the Carmack Amendment "covers not only common law negligence claims, but also claims for breach of contract." *Bullocks Express Transp., Inc.*, 329 F. Supp. 2d at 1253. Moreover, US Express' negligence claim is also preempted by 49 U.S.C. § 14501 (c)(1) ("ICCTA"). Accordingly, the

court grants Xpertfreight's motion for summary judgment against US Express for contribution and/or allocation with respect to Delta Stone's claims from breach of contract and negligence.

Carmack Amendment Claim

With respect to liability under the Carmack Amendment, Xpertfreight alleged the same thirty-two "undisputed facts" in support of this motion as it did in the motion against Delta Stone. *See* ECF No. 80. US Express disputed ten of these facts--numbers 3, 6, 9, 20, 21, 22, 23, 24, 25 and 27. *See* ECF No. 99. But the court likewise finds none of US Express' "disputes" are genuine. For example, for its response to "undisputed fact" 6, US Express acknowledged the Broker/Carrier Agreement referred to US Express as the "carrier" and Xpertfreight as the "broker," but then averred that because Bill of Lading DS000042 listed Xpertfreight as a "carrier" this creates a material fact; this was the same response provided for "undisputed facts" 3, 25, and 27. *See* ECF No. 99. As previously addressed, US Express acknowledged at the hearing there is no evidence in the record that Xpertfreight prepared the Bill of Lading; moreover, documents prepared by third-parties cannot create a genuine issue of fact. *See Chubb Group of Ins. Co.*, 243 F. Supp. 2d at 1070.

US Express also claimed that "Xpertfreight gave direction and control to US Express in transportation of the cargo when it stated that the cargo 'MUST BE TARPED,'" and that the use of the word "provide" in "undisputed facts" 20, 22, 23, and 24 was "vague and undefined." *See* responses to facts 20, 21, 22, 23, and 24, ECF No. 99 and ECF No. 114-6. The "MUST BE TARPED" argument was also raised at the hearing. US Express argued that the instruction creates an issue of fact because it shows Xpertfreight did more than just arrange for transportation of the cargo, but actually "gave special handling instructions" to US Express.

14

Unlike Delta Stone, however, US Express only cited cases related to multiple carriers to support its apportionment argument. *See* ECF No. 99 at n. 1. The court is not persuaded that an instruction to "tarp" a 17,000 pound stone cutting machine being transported cross-country in late December alone changed Xpertfreight's status as a "broker" to a "carrier" in the transaction. Ultimately, the evidence in the record shows that Xpertfreight meets the statutory definitions of a broker. *See* 49 U.S.C. § 13102 (2). Likewise, the court is not persuaded by US Express' "objections" over the use of the word "provide" in a dispositive motion. The procedures at issue here are the ones set forth in Rule 56, not Rule 26 of the Federal Rules of Civil Procedure. The court finds that none of US Express alleged disputes are "genuine." *Allen*, 119 F.3d at 839. Accordingly, the court grants Xpertfreights's motion for summary judgment against US Express for contribution and/or allocation with respect to Delta Stone's Carmack Amendment claim.

Attorneys' Fees

>Rule 37(c)(2) of the Federal Rules of Civil Procedure provides as follows:
>
>If a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
>>(A) the request was held objectionable under Rule 36(a);
>>
>>(B) the admission sought was of no substantial importance;
>>
>>(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter;
>>
>>(D) there was other good reason for the failure to admit.

Fed.R.Civ.P. 37(c)(2).

Here, Xpertfreight prepared and served discovery requests to US Express on November 15, 2016, which included six requests for admissions; the requests sought to establish US Express' role as a carrier and Xpertfreight's role as a broker. *See* ECF No. 81-7. For example, the requests asked US Express to confirm Xpertfreight did not provide motor vehicle transportation of the cargo, or receive or handled the cargo. *See id*. Rather than directly answer the requests, US Express claimed that terms in the requests like "provide," "handle," "have possession," "physically," and "deliver" were vague, ambiguous and undefined; US Express also averred that every one of the six requests called for a "legal conclusion." On these grounds, US Express denied all six requests. *Id*. This type of gamesmanship is not considered "valid objections" under Rule 36(a).

First of all, Rule 36(a)(1), expressly allows parties to serve requests for admission relating to "application of law to fact." Here, there is ample documentary evidence establishing it was US Express's drivers who picked up the cargo in Newark and drove it to Heber. *See* ECF Nos. 80-6, 102-1 at 9. Second, "Rule 36 was designed as a device by which at least some of the material facts of a case could be established without the necessity of formal proof at the trial." *Chaplin v. Okla. Furniture Mfg. Co.*, 324 F.2d 74, 76 (10th Cir. (1963). The requested information sought was of substantial importance. Here, the issue of contribution and/or apportionment of fault have been highly contested among the defendants in this case. In fact, several defendants have been dismissed from the case through dispositive motions. Third, given the procedural history of this case, and the documentary evidence at issue, US Express could not in good faith believe it might prevail on the matter. Finally, there was no other good reason to deny the requests for admissions.

As a result of US Express' denials, Xpertfreight had to spend time and money deposing US Express in January 2017. When confronted, US Express provided testimony that established Xpertfreight was the broker in the transaction at issue here. Therefore, Xpertfreight is entitled to an award of attorneys' fees under Rule 37, in an amount to be proven by a subsequent memorandum of costs and fees.

**HARBOR FREIGHT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 102)**

Harbor Freight seeks summary dismissal of Delta Stone's Carmack Amendment claim on the basis that 1) damage to the stone cutting machine did not occur in Harbor Freight's control; 2) Delta Stone is not entitled to consequential damages because it failed to provide notice; and 3) Delta Stone's damages, if any are limited to the $500 limitation in the agreement with US Express. (*See* ECF No. 102.)

Pursuant to Carmack Amendment, liability of carriers under bills of lading for "actual loss or injury to the property" applies to "(A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States[.]" *See* 49 U.S.C. § 14706. Here, it undisputed that Harbor Freight transported the cargo from "the Port of Newark Container Terminal to its facility in Newark, New Jersey." ECF No. 102 at ¶ 6, and ECF No. 102-1 at ¶¶ 3-4. On a Carmack claim, "the shipper establishes a *prima facie* case against either the initial carrier or the delivering carrier by proving: (1) delivery of the property to the carrier in good condition; (2) arrival of the property at the destination in damaged or diminished condition; and (3) the amount of its damages." *Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192, 1196 (10th Cir. 2003) (citing 49 U.S.C. 14706(a)). Here, it is also undisputed the cargo arrived damaged to its destination. *See* ECF No. 102 at ¶ 15. Section 14706 of the Carmack Amendment plainly provides "the carrier and any other carrier that

delivers the property and is providing transportation or service is subject to jurisdiction . . . [and is ] liable to the person entitled to recover under the receipt or bill of lading." *See* 49 U.S.C. 14706(a). Thus, as a matter of law, it is of no consequence to this motion whether the damage did not occur at the hands of Harbor Freight. "Conclusory allegations will not create a genuine issue of material fact necessitating trial." *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Next, Harbor Freight argues Delta Stone is not entitled to consequential damages because it did not provide notice, and thus damages, if any are limited to the $500 limitation in the agreement with US Express. The court is not persuaded by these arguments for the following reasons. First, contrary to the legal argument and authority cited by Harbor Freight, the Tenth Circuit has held that "special and consequential damages may be recovered under the Amendment," including damages for delay, lost profits and reasonably foreseeable consequential damages." *Atlas Aerospace LLC v. Advanced Transp., Inc*., 2013 WL 1737943, No. 12-1200-JWL, *4. Moreover, with respect to "release value provisions," like the $500 limitation Harbor Freight is seeking to enforce against Delta Stone, the Tenth Circuit has stated:

> A carrier may limit its liability by taking four steps: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission ("ICC"); (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Norton v. Jim Phillips Horse Transp., Inc.,* 901 F.2d 821, 827 (10th Cir. 1989). Since the ICC no longer exists, "the first requirement has been replaced with the requirement that 'a carrier ... provide a shipper with the carrier's tariff if the shipper requests it, instead of the shipper filing its tariff with the now-defunct ICC.'" *Bullocks Express Transp., Inc. v. XL Specialty Ins., Co*., 329

F. Supp.2d 1246, 1255 (D. Utah 2004)(*citing Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (8th Cir. 2003)).  Here, no facts in Harbor Freight's motion, the party carrying the burden of proof, address any of these factors; there are also no facts in the record addressing any of these factors.  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   An invoice, or Standard Terms and Conditions, signed by US Express (another carrier), without more, is not enough to provide adequate notice to Delta Stone of a limitation on liability regarding consequential damages. (ECF No. 102-1 at 7.)  Based on the foregoing, the court denies Harbor Freight's motion for summary judgment.

### HARBOR FREIGHT'S MOTION FOR LEAVE (ECF No. 134)

Following the close of discovery and the court's hearing on the motions addressed above, Harbor Freight filed a Motion for Leave in support of its motion for summary judgment as to Delta Stone's Carmack Amendment claim based on newly acquired evidence.  *See* ECF No. 134. The crux of this motion is Harbor Freight's contention that during a Rule 30(b)(6) deposition, US Express admitted its driver caused the damage to the stone cutting machine, and thus US Express' admission requires Harbor Freight's immediate dismissal from this action.  *See id*.

First of all, this is not "newly acquired evidence," the record shows the driver for US Express admitted to damaging the cargo.  *See* ECF Nos. 80-6, 81-4, 102-1 at 9, and 102-1 at 17. Moreover, as discussed more fully above, for purposes of Carmack Amendment liability, it is of no consequence which carrier damaged the cargo.  *See* 49 U.S.C. 14706(a).  Thus, although the court reviewed both ECF No. 134 and Delta Stone's response, ECF No. 137, and grants Harbor Freight's motion, the end result is the same.

The court orders as follows:

1. Xpertfreight's Motion to Dismiss ECF No. 79 is GRANTED;

2. Xpertfreight's Motion for Summary Judgment ECF No. 80 is GRANTED;

3. Xpertfreight's Motion for Summary Judgment and Request for Fees ECF No. 81 is GRANTED;

4. Harbor Freight's Motion for Summary Judgment ECF No. 102 is DENIED; and

5. Harbor Freigth's Motion for Supplemental Briefing ECF No. 134 is GRANTED.

DATED this 9th day of January, 2018.

BY THE COURT:

_____
Honorable Clark Waddoups
United States District Court Judge